IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

NORBERTO VÁZQUEZ SOTO
    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
    Defendant.

CIV. NO. 19-1168 (MDM)

## OPINION AND ORDER

Pending before the Court is counsel for the plaintiff's "Petition for authorization of an attorney fee pursuant to the Social Security Act." (Docket No. 32). Plaintiff's counsel requests that the Court authorize attorney's fees pursuant to 42 U.S.C. § 406(b)(1) for successful representation of the plaintiff in federal court. For the reasons set forth below, the petition is **GRANTED in part and DENIED in part**.

I.    **Procedural and Factual Background**

Plaintiff Norberto Vazquez (the "plaintiff") filed this action challenging the Commissioner of the Social Security Administration's (the "Commissioner") denial of his request for Social Security disability insurance benefits. (Docket No. 3). The Commissioner filed an answer to the complaint (Docket No. 18) and later filed a "Consent motion for remand" pursuant to sentence four of 42 U.S.C. § 405(g), requesting that the Court reverse and vacate the agency's termination of benefits under Sec. 205(u), 42 U.S.C. § 405(u). (Docket No. 24). Pursuant to the Commissioner's Consent motion for remand, the Court reversed and vacated the agency's final decision to terminate the plaintiff's benefits under Sec. 205(u), 42 U.S.C. § 405(u), and remanded the case pursuant to sentence four of 42 U.S.C. § 405(g). (Docket Nos. 25; 26). Plaintiff's benefits were ordered to be reinstated retroactive to the date of

termination, subject to the rules on eligibility for payment. Judgment was then entered accordingly.

Because the case was voluntarily remanded by the Commissioner, neither party had to prepare memorandums of law and there was no need for an oral argument.

Plaintiff's counsel subsequently filed a motion for attorney's fees pursuant to the Equal Access to Justice Act in the amount of $1,600.96. (Docket No. 27). The Commissioner expressed no objection to counsel's fee petition for the total sum requested. The request for fees was thus granted by the Court. (Docket No. 30).

Plaintiff's counsel later filed the pending motion, i.e., "Petition for authorization of an attorney fee pursuant to the Social Security Act." (Docket No. 32). In the petition, counsel requests that the Court authorize attorney fees in the amount of $32,157.15 for his work representing the plaintiff in federal court pursuant to 42 U.S.C. § 406(b). The Commissioner opposed counsel's fee petition, questioning both the timeliness of the request and the reasonableness of the amount requested. (Docket No. 36). Counsel for the plaintiff then filed a Reply reiterating and justifying his petition and amending the requested amount to $31,070.50. (Docket No. 39).

## II.    <u>Fees payable under the Social Security Act</u>

42 U.S.C. § 406 provides the statutory framework for attorneys to seek fees for their representation of claimants in actions for past-due Social Security benefits. "The statute deals with the administrative and judicial review stages discretely: § 406(a) governs fees for representation in administrative proceedings; [while] § 406(b) controls fees for representation in court." *Gisbrecht v. Barnhart*, 535 U.S. 789, 794 (2002). For fees under § 406(a), attorneys may petition the agency directly, and awards are based on several factors. *See* 20 CFR § 404.1725(b); *Pais v. Kijakazi*, 52 F.4th 486, 489–90 (1st Cir. 2022). In contrast, under 42 U.S.C. § 406(b)(1)(A), the Court may award a *reasonable* fee to the attorney who successfully represented a claimant in court. *Id.*

Relevant here, Section 406(b) authorizes courts to grant fees for work performed before them that results in a favorable outcome for the claimant. Specifically, § 406(b)(1)(A) states the following:

_____

> Whenever a court renders a judgment favorable to a claimant under [Title II of the Social Security Act] who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment.

42 U.S.C. § 406(b)(1)(A). The statute thus authorizes the Social Security Administration to withhold 25 percent of the claimant's past-due benefits for such fees and sets this amount as the limit a court may award. *See Gisbrecht*, 535 U.S. at 795. The fee is payable "out of, and not in addition to, the amount of past-due benefits." *Id.*

The Supreme Court also settled that § 406(b) works in tandem with representative fee arrangements, stating: "[Section] 406(b) does *not* displace contingent-fee agreements as the primary means by which fees are set for successfully representing Social Security benefits claimants in court. Rather, § 406(b) calls for *court review* of such arrangements as an independent check, to assure that they yield *reasonable results* in particular cases." *Id.,* at 807.

A.    Proper Standard for § 406(b) Timeliness

Section 406(b) does not include a specific timeframe for filing fee applications under the Social Security Act, and up until recently there was no clear guidance from the First Circuit on the proper deadline to file such petitions. In 2022, however, the First Circuit in *Pais v. Kijakazi*, finally responded to the question of what the appropriate timeliness standard for fee petitions brought under § 406(b) is. 52 F.4th 486, 489 (1st Cir. 2022). The First Circuit concluded: "[w]e are inclined to agree with the Tenth Circuit's reasoning on this issue, and therefore adopt Rule 60(b)(6)'s reasonable time standard for determining the timeliness of § 406(b) petitions made in this circuit." *Id.* at 491. The First Circuit found that substantial justice would be served by allowing counsel to seek § 406(b) fees under that Rule's authority and highlighted Rule 60(b) as the "grand reservoir of equitable power to do justice in a particular case," *Id.* (quoting *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1147 (10th Cir. 1990)).

The First Circuit also settled that the "triggering event" from which reasonability (timeliness) should be assessed is the issuance of the Notice of Award ("NOA")[1], and not the court's judgment ordering the underlying remand, or any other another document. *Pais,* supra. "The availability of § 406(b) fees is premised on the SSA's subsequent determination of past-due benefits, which is established by the NOA." *Id*. at 494. As such, "when determining the timeliness of a § 406(b) petition, courts should assess whether a reasonable time has elapsed since [the NOA] was issued by the agency." *Id*.

Before the First Circuit's decision in *Pais*, the undersigned had similarly found that the triggering event for the timeframe to start running in order for an attorney to file a petition for fees under § 406(b) is the issuance of the NOA by the agency. *See Aragunde v. Commissioner of Social Security,* Civ. No. 18-1892 (D.P.R. January 19, 2022) (denied as untimely attorney fee petition under § 406(b) when filed over five (5) months from the time the NOA was issued); *De Jesús López v. Comm'r of Soc. Sec.,* 2022 WL 17818296 (D.P.R. Dec. 19, 2022) (denied as untimely counsel's request for attorney fees under §406(b) that was filed more than ten (10) months after the NOA was issued and sent directly to counsel. "Looking at the significant dates in question, counsel's fee petition appears to be unreasonably late under any plausible timeframe."). Other courts within the District of Puerto Rico had similarly held as much. *See, e.g.*, *Dieppa-Velázquez v. Comm'r of Soc. Sec.*, Civ. No. 19-1574 (D.P.R. May 25, 2021) *(*finding that the receipt of the NOA (and not the "close out letter" or any other document sent by the agency), is the event that should be used by the courts to begin counting the deadline for counsel to file a fee petition for Social Security cases); *Gonzalez v. Comm'r of Soc. Sec.*, No. 18-cv-1714 (D.P.R. May 26, 2021) (same); *Nuñez Ramos v. Comm'r of Soc. Sec.*, No. 18-cv-1243 (D.P.R. May 25, 2021) (same).[2]

---

[1] The NOA is the initial notice advising plaintiff of his past due disability insurance benefits and the amount withheld for plaintiff to pay for attorney's fees.

[2] At the time these decisions were made, the Local Rules of this District did not specify a timeframe for attorneys to request fees in Social Security cases. On February 28, 2022, however, the Local Rules were amended to include a specific timeframe for counsel in the District of Puerto Rico to request attorney's fees for Social Security cases both under the EAJA & § 406(b). To that effect, Local Rule 9(d)(2) states that: "A party seeking attorneys' fees pursuant to 42 U.S.C. § 406(b) shall have thirty (30) days after counsel's receipt of the original, amended, or corrected Notice of Award, or the Social

### III.   <u>Discussion</u>

In the present case, the plaintiff's counsel maintains that his fee petition under § 406(b) was timely filed and is reasonable because a favorable outcome for the claimant was achieved. Because attorney fees have already been awarded to counsel under the EAJA, and they are substantially less than the fees now requested under § 406(b), counsel correctly asserts that those fees previously awarded to him will be refunded to the plaintiff if the Court were to grant his petition under § 406(b).[3] On its part, the Commissioner recognizes that it has no financial stake in this matter—because the award comes out of the claimant's past-due benefits and not the Government—but it nevertheless opposed counsel's fee petition, arguing it is untimely because it was filed more than thirty (30) days after the receipt of the original NOA and past the deadline requested by counsel. The Commissioner argues in the alternative that if the Court were to find the request was timely, it should nevertheless determine the reasonableness of the amount requested given the circumstances of this case.

#### A.   <u>Timeliness of the fee petition</u>

Counsel for the plaintiff argues that his fee petition is timely even though it was filed more than seven (7) months *after* the issuance of the *original* NOA by the SSA. The Court examines the pertinent facts to determine whether the fee petition was timely filed.

Here, the NOA sent by the SSA to the plaintiff is dated April 27, 2020. (Docket No. 32-2). Plaintiff's counsel, nevertheless, claims that he did *not* receive the NOA until September 30, 2020.[4] (Docket No. 32). On November 19, 2020, plaintiff's counsel

---

Security Correspondence sent at the conclusion of the Agency's past-due benefit calculation, stating the amount withheld." Because this rule was enacted *after* the fee petition at issue was filed, the Court will not apply this hard-and-fast deadline retroactively.

[3] Congress harmonized fees payable by the Government under the EAJA with the fees payable under § 406(b) out of the claimant's past-due benefits as follows: fee awards in Social Security cases may be made under *both* provisions, but the claimant's attorney *must* reimburse to the claimant the *lesser* award. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002); 28 U.S.C. § 2412.

[4] Counsel did *not* submit any evidence showing that he actually received the NOA on the date that he claims. Though that would have been the most prudent thing to do, in its opposition, the Commissioner did not imply that counsel's representations were in any way untrustworthy, nor did it cast doubt on the veracity of counsel's statements. In addition to that, the Court is cognizant of the fact

filed a Motion for extension of time in which to file a petition for attorney's fees pursuant to the Social Security Act, "allowing 30 days" in which to file the Section 406(b) petition. (Docket No. 31). Counsel did not wait for the Court to rule on his thirty-day request for extension of time and on December 3, 2020, he filed the Section 406(b) motion at issue.[5]

In his fee petition, counsel explained that the calculation of amounts included in the NOA is inconsistent, and therefore, such document does not appear to be the *final* NOA. Counsel further indicated that a copy of the final NOA was requested from the Payment Center of the agency, but no response had been received prior to the filing of the fee petition. In order "[t]o avoid any further delay in awaiting a corrected Notice of Award or close out letter," counsel says he filed the fee petition using the documentation available at that time, namely, the *original* NOA. (Docket No. 32 at 2). Plaintiff's counsel therefore filed his fee petition without waiting for the *corrected* NOA, which, the Commissioner specified was later issued.

Applying the "reasonableness" standard recently adopted by the First Circuit, and considering the specific circumstances of this case, the Court finds the fee petition was timely filed. The Court explains.

Plaintiff's counsel says he received the NOA on September 30, 2020, and shortly thereafter, on November 19, 2020, he sought an extension of time to file his fee petition, thereby explicitly showing an interest in preserving his claim to the Section 406(b) fees. Furthermore, as counsel for the plaintiff argued, the original NOA apparently had inconsistencies in the calculation of the amounts owed to the claimant, which required correction; therefore, the NOA received by the claimant and later received by counsel was *not* the *final* NOA. In fact, a corrected NOA was issued by the agency in late November 2020. This is relevant because courts have found that the *final* NOA, and *not* the interim NOA, is what triggers the filing date for a petition for

---

that counsel is an officer of this Court who has a duty of candor to it, and, as such, the Court has no reason to believe that counsel is being dishonest. The Court will thus take counsel's representations at face value.

[5] On December 14, 2020, the Court invertedly granted counsel's request for extension of time because it did not realize at that time that plaintiff's counsel had *already* filed his fee petition. The motion for extension of time was, in essence, moot. (Docket No. 33).

fees under Section 406(b). *See Cordice v. Astrue*, No. 09-254, 2012 WL 243089 at *1 (D. Me. Jan. 24, 2012) (distinguishing between interim NOA and final NOA and holding that the time to file a fee petition is after a *final* NOA). The Court finds this rationale to be persuasive. Accordingly, if the Court were to take the date of the final NOA (late November 2020) as the triggering event for the timeframe to start running for counsel to file a timely fee petition under the Social Security Act, then counsel filed the fee petition in a timely manner because he filed it five days *prior* to the issuance of the final NOA. That is, counsel filed the fee petition *before* the final NOA was issued and thus *before* the timeframe began to run.

Pursuant to the above, the Court finds that, under the reasonableness standard recently adopted by the First Circuit, counsel's fee petition was timely filed.

B.   <u>Reasonableness of the fees requested</u>

Moving on to the reasonableness of the amount requested by plaintiff's counsel, he claims that his request for $31,070.50, in fees for the plaintiff's representation in federal court is reasonable and should be allowed. To support his contention, counsel maintains that the amount requested is proper because it does not exceed twenty-five percent (25%) of plaintiff's past due benefits, which is the statutory cap, and is consistent with fee petitions granted in comparable cases. More specifically, counsel claims that he requested twenty-one percent 21% of the plaintiff's past due benefits, which is less that the twenty-five percent legally allowed. He further argues that, given the contingent nature of the representation, the amount sought reflects the express fee agreement between himself and the plaintiff. Finally, counsel avers that his fee petition is reasonable because the case was successfully resolved in favor of his client and there is no reason why the requested award should be deemed unjust.

The Court begins with an examination of the relevant case law. In *Gisbrecht v. Barnhart*, 535 U.S. 789, 806-07 (2002), the Supreme Court noted that contingent fees are the "primary" means by which fees are set for successfully representing Social Security claimants and should not be reduced unless "inordinately large." The Supreme Court thus settled that § 406(b) does not displace contingent fee agreements within the statutory ceiling. *Id.* at 790. Instead, it instructs courts to review for

reasonableness the fees yielded by those agreements. A twenty-five percent contingent fee agreement is customary for these cases. *See id. Ezekiel v. Astrue,* 853 F. Supp. 2d 177, 179–80 (D. Me. 2012). The *Gisbrecht* Court held (emphasis supplied): "Within the 25 percent boundary [of the contingency-fee agreement], as petitioners in this case acknowledge, the attorney for the successful claimant must *show* that the fee sought is *reasonable for the services rendered.*" *Gisbrecht,* 535 U.S. at 807.

It is thus for the courts to determine whether the amount requested under § 406(b) is reasonable and should be awarded in cases where, like here, the parties entered into a contingent fee agreement. *Id.* at 807. Following the teachings of *Gisbrecht,* as informed by *Crawford v. Astrue,* 586 F.3d 1142, 1148 (9th Cir. 2009) and *Jeter v. Astrue,* 622 F.3d 371 (5th Cir. 2010), courts should take the focus off the lodestar analysis (hourly rate multiplied by reasonable time spent) when determining whether the fee produced by a contingent fee agreement is reasonable. Instead, the Supreme Court held that a district court charged with determining a reasonable fee award under § 406(b)(1)(A) must respect "the primacy of lawful attorney-client fee agreements," *id.* at 793, "looking first to the contingent-fee agreement, then testing it for reasonableness." *Id.* at 808.

The Supreme Court further noted that courts that had followed this model had "appropriately reduced the attorney's recovery based on the character of the representation and the results the representative achieved." *Id.* A fee resulting from a contingent-fee agreement is unreasonable, and thus *subject to reduction by the court*, if the attorney provided substandard representation or engaged in dilatory conduct in order to increase the accrued amount of past-due benefits, *or if the "benefits are large in comparison to the amount of time counsel spent on the case."* *Id. See Crawford v. Astrue*, 586 F.3d 1142, 1148 (9th Cir. 2009). "[A]s an aid to the court's assessment of the reasonableness of the fee yielded by the fee agreement," but "not as a basis for satellite litigation," the court may require counsel to provide a record of the hours worked and counsel's regular hourly billing charge for noncontingent cases. *Gisbrecht,* supra at 807. The attorney bears the burden of establishing that the fee sought is reasonable. *Id.*

Since the Supreme Court made clear in *Gisbrecht* that courts must look first to the contingent-fee agreement in these types of cases, that is the first thing this Court looks at.

Here, the agreement between the claimant and his counsel provides that the representation in a civil action in federal court would not cost the claimant "more than 25% of the past due benefits." (Docket No. 32-1). The agreement then cites to Section 406(b)(1)(A), which states that an attorney who successfully represents a claimant in court may be awarded "a *reasonable* fee . . . not to exceed 25 percent" of the claimant's past due benefits. In the contingent fee agreement, therefore, the plaintiff and his attorney agreed that the legal fees ultimately charged, if the case was won, would be determined by the contingent nature of the representation and the reasonableness of the amount requested.

Next, the Court finds that the fees requested by plaintiff's counsel ($31,070.50,) comply with the statutory cap because they are not greater than twenty-five percent (25%) of the plaintiff's past due benefits. That alone, however, is not dispositive. The fact that the award sought complies with the statutory cap does not deem it reasonable *per se* because courts must conduct an independent review and look to the factors established by the Supreme Court when assessing the reasonableness of the fees yielded by the contingent fee agreement. Having so found, the Court tests the contingent-fee agreement for reasonableness by answering whether plaintiff's counsel provided substandard representation or engaged in dilatory conduct in order to increase the accrued amount of past-due benefits. In the present case, as the Commissioner concedes, there is no indication that counsel's conduct was improper or that his representation was subpar. Counsel ultimately achieved complete success because the case was remanded (for which the first step was filing the case in federal court) and caused no delay that would drive up his fee. *See, e.g., Ezekiel v. Astrue*, 853 F. Supp. 2d 177, 178–79 (D. Me. 2012). As such, no reductions are warranted based on counsel's conduct or the character of the representation.

What remains is the final *Gisbrecht* factor to test the fees sought for reasonableness: whether the benefits are large in comparison to the amount of time counsel spent on the case. When that is the case, a downward adjustment is in order. *See Gisbrecht,* 535 U.S. 789, 808. Plainly stated, the *Gisbrecht* Court has endorsed fee reductions, when appropriate, by directing that "[i]f benefits are large in comparison to the amount of time counsel spent on a case, a downward adjustment is similarly in order." *Id.* at 808. *See also Weed v. Colvin,* No. 14-271-JHR, 2016 WL 3919849, at *2 (D. Me. July 15, 2016) (citing *Gisbrecht,* 535 U.S. at 808 and *Rodriquez v. Bowen,* 865 F.2d 739, 746–47 (6th Cir. 1989)) ("Reduction in the amount that otherwise would be payable pursuant to a contingent fee agreement between a claimant and attorney is appropriate to the extent that . . . the benefits are disproportionate in relation to the amount of time counsel spent on the case (thereby resulting in a windfall))."

Although *Gisbrecht* did not provide a definitive list of factors that should be considered when determining whether a fee is reasonable or how those factors should be weighed, the Court did direct the lower courts to consider "the character of the representation and the results the representative achieved" when determining the reasonableness of the amount sought. *Crawford v. Astrue,* 586 F.3d at 1151; *Gisbrecht,* 535 U.S. at 808; *see also Mudd,* 418 F.3d at 428 ("The Court did not provide a definitive list of factors to be considered because it recognized that the judges of our district courts are accustomed to making reasonableness determinations in a wide variety of contexts." (quotation and alterations omitted)). The Supreme Court also concluded that lower courts may properly reduce the fee for substandard performance, delay, or benefits that are not in proportion to the time spent on the case. *Gisbrecht,* 535 U.S. at 808.

Applying the *Gisbrecht* teachings, an important factor applies here—large fees in comparison to lawyer time. Counsel for the plaintiff indicated that he expended *only* 7.8 hours for his total efforts in this case. (Docket No. 32 at 6). Counsel is nevertheless requesting $31,070.50 in fees for 7.8 total hours of billable work. In the context of this particular case, it therefore appears that the hours counsel spent working on plaintiff's case are minimal in comparison to the large fee sought. Counsel's § 406(b) fee petition

amounts to a *de facto* hourly rate of approximately $3,983.39 per hour in this case. Upon close examination, the fees sought are by no means reasonable. Despite the fact that the Court recognizes that strictly applying the lodestar method—without more— is unsuitable in today's analysis, the Court believes that the seemingly high amount requested in fees is excessive and unreasonable given the amount of actual time spent by counsel representing the plaintiff in this case. Certainly, counsel prepared the complaint and filed it, but that was the extent of his work in this case—that is why he *only* spent 7.8 hours of lawyer time. Though through no "fault" of his own, counsel was required to spend virtually no time on the federal lawsuit because the Commissioner quickly consented to the case being reversed and remanded *without* the need for briefing or oral argument.

Pursuant to the above, the Court finds that being compensated $31,070.50 for 7.8 hours of work is remarkably high and seems like an unearned windfall for the attorney under the particular circumstances of this case. Further bolstering the Court's conclusion is the fact that, faced with an identical factual scenario, the court in *Ezekiel* concluded that the lawyer could not have expected that the mere filing of a boilerplate complaint—even before he laid out his arguments in his Memorandum of Law or argued his case before the Magistrate Judge—would generate automatic success. *Ezekiel*, 853 F. Supp. 2d at 179–80. "Certainly, the lawyer had to file the complaint as a precondition to his success, but the *immediate remand* was a not-to-be expected and an unearned outcome." *Id.* Under those circumstances, the *Ezekiel* court concluded that "the fee [sought] should be reduced under the teachings of *Gisbrecht, Crawford* and *Jeter." See Ezekiel supra* at 180. The Court is persuaded by *Ezequiel*'s reasoning and similarly so finds.

The fees to be awarded out of the claimant's past-due benefits to his attorney should be reduced because the amount sought is "inordinately large" when compared to the amount of time counsel spent working on the case and, therefore, the fee petition falls outside of the "reasonableness" spectrum. *See Gisbrecht*, 535 U.S. at 806-07. The Court further finds that counsel for the plaintiff failed to show that the fees sought are "reasonable for the services rendered." *Gisbrecht,* 535 U.S. at 807.

Based on the foregoing, the Court finds that counsel's fees should be reasonably reduced as they constitute an undeserved and unjustifiable windfall.

One problem nevertheless remains: What constitutes a proper reduction? The undersigned looks to other courts for guidance. As *Gisbrecht, Crawford* and *Jeter* emphasize, the lodestar amount (hourly rates times hours) is *not* the starting point for the reduction. The analysis requires something beyond a low lodestar number before a court can reduce a contingent fee award. "[W]e read *Gisbrecht* as commanding that in order for district courts to rely on the lodestar method to find a particular fee constitutes a windfall, the district court must also articulate the factors that demonstrate to the court that the fee is unearned." *Ezekiel,* 853 F. Supp. 2d at 179–80. Specifically, the district court must discuss the factors that demonstrate that the success on appeal is not of the attorney's making, but rather, is attributable to some other source for which it would be unreasonable to compensate the attorney." *Jeter,* 622 F.3d at 381.

As a curb to the reduction for a windfall, moreover, the undersigned takes into consideration several factors listed in *Ezekiel*, namely:

> [t]hat litigating in federal court is generally a more expensive and difficult practice than in state court; that there must be significant profit in successful contingent fee cases so that lawyers can continue that form of practice[6] and so that claimants can find legal representation (representation would often be unavailable without the contingent fee arrangement); and that this lawyer has been specializing in these cases for many years and has become proficient and efficient."

*Ezekiel*, 853 F. Supp. 2d at 180-181. Taking those factors into account, the court in *Ezekiel* found that the amount requested, which was $12,426, i.e., 25% of claimant's past due benefits, resulted in an undeserved windfall to the attorney for 3.1 hours of work. The court ultimately approved an amount in fees of three times the lodestar,

---

[6] Courts must therefore consider the rationale of contingent fee agreements, namely, that the attorney will be paid nothing in the cases he or she loses. Necessarily, therefore, the attorney must generate significantly more than the lodestar in the cases he or she wins, in order to protect his or her income as well as the overhead (rent, heat, light, insurance, staff, supplies, computer, etc.) that is required regardless of the fact that he or she wins or loses. *Ezekiel,* 853 F. Supp. 2d at 179–80.

which was $135 per hour, for a total award of $3,675. The undersigned finds *Ezekiel's* reasoning to be illustrative, fair, and reasonable.

Here, plaintiff's counsel indicated to the Court in his request for EAJA fees that his typical hourly rate for the 2019-2020 year was $205.25, representing the cost-of-living adjustment allowed by statue, 28 U.S.C. § 2412(d)(2)(A)(ii). (*See* Docket No. 27). Following the approach adopted in *Ezekiel* (awarding counsel three times the lodestar calculation), but increasing that amount, the Court hereby approves an award of $9,605.7 (six times counsel's disclosed hourly rate).[7] Just as the Magistrate Judges in *Ellick,* and in *Ezekiel* noted*,* the undersigned also acknowledges "the regrettable imprecision of [this] analysis," 445 F. Supp. 2d at 1173, "but the caselaw leaves me no alternative." *Ezekiel*, 853 F. Supp. 2d at 181. The Court finds that an increase in the calculation used by *Ezekiel* is warranted here given that attorneys for the plaintiffs assume a considerable amount of risk in representing social security claimants and, in the undersigned's experience, and appreciating the reality of this practice, claimants and their attorneys loose far more cases than they win.

On a final note, the Court does not take lightly its duty to serve as an "independent check" for the reasonableness of fees requested under Section 406(b), a duty which the Court envisions will render variable results on a case-by-case basis. That duty, the Court believes, must always be balanced against a client and his attorney's free and willful decision to enter into contingent-fee agreements. "[A] contingent fee agreement ordinarily should govern" and "only in the exceptional situations that *Gisbrecht, Jeter* and *Crawford* feature should a judicial officer need to recalculate the fee." *Id*. One such situation was present here.

---

[7] The Court multiplied counsel's disclosed hourly rate ($205.25) by the total hours worked in this case (7.8) and then multiplied that result by six (6) to obtain the final award.

### IV.    <u>Conclusion</u>

Upon weighing the relevant considerations, albeit a close call, the Court finds that the amount in fees requested by plaintiff's counsel under § 406(b) was not reasonable and should be reduced as it constituted an unearned windfall to the attorney. Counsel's petition for attorney fees under § 406(b) is **GRANTED in part and DENIED in part**. Counsel shall be awarded an amount of $9,605.7 in attorney's fees pursuant to § 406(b). Plaintiff's counsel is thus **ORDERED** to refund to the plaintiff the fees previously awarded by this Court under the EAJA within seven (7) days upon receipt of the § 406(b) fees.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this <u>30th</u> day of June 2023.

MARSHAL D. MORGAN
United States Magistrate Judge